**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Willy Elmer SWEETEN,**
**Defendant–Appellee.**

No. 90–30343.

United States Court of Appeals,
Ninth Circuit.

Submitted May 7, 1991 \*.

Decided May 20, 1991.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Ronald W. Skibbie, Asst. U.S. Atty., Spokane, Wash., for plaintiff-appellant.

Richard W. Sanger, Sanger & Bartoletta, Spokane, Wash., for defendant-appellee.

Before WRIGHT and O'SCANNLAIN, Circuit Judges, and MacBRIDE, ** District Judge.

PER CURIAM:

We must review the district court's decision not to enhance a convicted defendant's sentence under the mandatory minimum-sentence provision of the Firearms Owners' Protection Act, as amended by the Career Criminals Amendment Act of 1986 and the Anti–Drug Abuse Act of 1988. 18 U.S.C. § 924(e) (1988) (original version enacted as part of the Armed Career Criminal Act of 1984). Because we agree with the government that the district court's decision was in error, we vacate and remand for resentencing.

I

It is unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to ... possess ... any firearm or ammunition." *Id.* § 922(g)(1). The Firearms Owners' Protection Act, as amended, imposes a mandatory minimum sentence upon "career criminals" who violate this law:

** The Honorable Thomas J. MacBride, United States District Judge for the Eastern District of California, sitting by designation.

(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person *shall be* fined not more than $25,000 and *imprisoned not less than fifteen years,* and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

(2) As used in this subsection—

\* \* \* \* \* \*

(B) The term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 924(e) (emphasis added).

On May 22, 1990, Willy Elmer Sweeten was convicted on his own plea of being a felon in possession of a firearm. At the time of sentencing, the government presented evidence of three predicate convictions and contended that Sweeten is an armed career criminal who qualifies for the mandatory minimum sentence under section 924(e). The three convictions are (1) a 1972 Oregon conviction for robbery, (2) a 1979 Texas conviction for burglary of a habitation, and (3) a 1985 Ohio conviction for aggravated assault. There is no dispute that the Oregon and Ohio convictions qualify as predicate convictions for purposes of sentence enhancement: each is a "violent felony" within the meaning of section 924(e)(2)(B)(i). The question is whether the Texas conviction also qualifies as a predicate conviction under either section 924(e)(2)(B)(i) or section 924(e)(2)(B)(ii). The district court concluded that the Texas conviction does not qualify under either subsection and declined to enhance Sweeten's sentence to a minimum of fifteen years.

First, the court concluded that there was no judicially noticeable evidence that Sweeten's Texas conviction had been for a violent felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). The court noted that the state court's judgment describes Sweeten's offense as "burglary of a habitation with intent to commit theft," a description that both on its face and under applicable Texas law bears no indication of the use or threat of physical force.

In response, the government presented the court with a certified nunc pro tunc order, dated July 31, 1990, from the district court of Harris County, Texas, which indicated that the original 1979 judgment had mischaracterized Sweeten's offense due to a typographical error. The order rephrased Sweeten's offense as "burglary of a habitation with intent to commit aggravated assault." This language more closely tracks the language in Sweeten's indictment and signed guilty plea, both of which the government also presented to the court and which describe Sweeten's offense as "unlawfully without the effective consent of ... the Complainant, intentionally enter[ing] a habitation owned by the Complainant, and commit[ting] the attempt to commit the felony of Aggravated Assault."

The district court, however, refused to credit these additional materials. Citing the Supreme Court's recent decision in *Taylor v. United States,* —— U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the court held that it was only permitted to consider the original 1979 judgment and the underlying state statute in determining whether the Texas conviction qualified as a predicate conviction for purposes of sentence enhancement. The court also noted that the consideration of an ex parte, nunc pro tunc order would implicate serious due process concerns. Accordingly, the court

declined to take Sweeten's Texas conviction into account under section 924(e)(2)(B)(i).

Second, the court concluded that the Texas conviction did not qualify as a prior conviction for "burglary" within the meaning of section 924(e)(2)(B)(ii). Here, again, the court relied upon the Supreme Court's recent decision in *Taylor*. As an initial matter, the court noted that the applicable Texas statute defines "habitation" to include vehicles, whereas the *Taylor* Court appeared to define "burglary" in a generic sense that would not contemplate burglary of vehicles. It appeared conceivable, therefore, that Sweeten had been convicted for an offense that would not qualify as a predicate burglary under the *Taylor* definition. So long as that was conceivable, the court reasoned, the Texas conviction could not be considered.

Moreover, even if reference to the state court record might indisputably establish that Sweeten's conviction *had been* for a burglary within the *Taylor* definition, as the court had already concluded, *Taylor* itself barred any inquiry into the facts underlying any predicate conviction. Accordingly, the district court declined to take Sweeten's Texas conviction into account under section 924(e)(2)(B)(ii) as well.

The government challenges the court's reading of both subsections in this timely appeal.

## II

Ordinarily, "[t]rial judges are accorded virtually unfettered discretion in determining what sentence to impose on a defendant." *United States v. Borrero–Isaza*, 887 F.2d 1349, 1352 (9th Cir.1989). For example:

> [w]e have held that we lack jurisdiction to review a district court's discretionary decision not to depart downward from the sentencing guidelines. *United States v. Morales*, 898 F.2d 99 (9th Cir. 1990). We have also held that appellate review of a sentence that is within the applicable guideline range, and was not imposed in violation of law, is unavailable. *United States v. Pelayo–Bautista*, 907 F.2d 99, 101 (9th Cir.1990). And it is

clear that a district court has no obligation to state reasons for imposing a sentence at a particular point within the guideline range, so long as the range does not exceed 24 months. 18 U.S.C. § 3553(c)(1); *United States v. Howard*, 894 F.2d 1085 (9th Cir.1990).

*United States v. Garcia–Garcia*, 927 F.2d 489, 490 (9th Cir.1991).

When Congress enacted the sentence-enhancement provision in question, however, it clearly intended to limit the courts' discretion. A minimum sentence of fifteen years is *mandatory* for all convicts whose criminal records satisfy the provision's terms. *See* 18 U.S.C. § 924(e)(1) (1988); *see also* United States Sentencing Commission, *Guidelines Manual*, § 5G1.1(c)(2) (Nov.1990) (a district court may impose a sentence "at any point within the applicable guideline range, provided that the sentence is not less than any statutorily required minimum sentence"). We must therefore review de novo, as a question of law, the district court's determination that section 924(e) does not apply. *See United States v. Potter*, 895 F.2d 1231, 1235 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 3247, 111 L.Ed.2d 757 (1990).

## III

We address sequentially the district court's analysis under each of the two subsections, 924(e)(2)(B)(i) and 924(e)(2)(B)(ii).

## A

In *Taylor*, the Supreme Court offered guidance with respect to what materials a sentencing court may consider in determining whether a prior conviction satisfies the terms of section 924(e). The Court first recognized that "[t]he Courts of Appeals uniformly have held that § 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor*, 110 S.Ct. at 2159 (citing, inter alia, *United States v. Sherbondy*, 865 F.2d 996, 1006–10 (9th Cir.1988)). In adopting this "formal categorical approach," the Court then of-

fered three reasons for why it found "the reasoning of these cases persuasive:"

First, the language of § 924(e) generally supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions....

Second, ... the legislative history of the enhancement statute shows that Congress generally took a categorical approach to predicate offenses. There was considerable debate over what kinds of offenses to include and how to define them, but no one suggested that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case. If Congress had meant to adopt an approach that would require the sentencing court to engage in an elaborate fact finding process regarding the defendant's prior offenses, surely this would have been mentioned somewhere in the legislative history.

Third, the practical difficulties and potential unfairness of a factual approach are daunting....

*Id.*

■ In light of this language, we agree that it would have been error for the district court to inquire into the facts underlying Sweeten's Texas conviction. We further agree that it would have been error to regard that conviction as one for an offense involving the use or threat of physical force, either on the basis of the original judgment, which bears no indication of the use or threat of physical force, or *solely* on the basis of the nunc pro tunc order, which is dated eleven years after the original judgment, which was acquired in an ex parte fashion, and which purports to state without any supporting documents that the original judgment mischaracterized the offense of conviction. The due process concerns implicated by reliance upon such a document are daunting indeed.

■ We disagree, however, with the district court's conclusion that it could not inquire any further into the grounds for Sweeten's Texas conviction. To say, as *Taylor* clearly does, that a sentencing court may not inquire into the underlying facts of a prior conviction is *not* to say that the original judgment and corresponding criminal statute are the only materials that a sentencing court may or should consider. Here, the government also presented the court with a copy of Sweeten's original 1979 signed guilty plea, which demonstrates on its face that Sweeten pled guilty to an offense involving the use or threat of physical force. In addition, the government presented the court with a copy of Sweeten's indictment, which parallels the language of the guilty plea. Consideration of these additional documents, when proffered by the government at sentencing, does not require any searching inquiry into the underlying facts of a defendant's conviction. It therefore does not contradict the "formal categorical approach" mandated by the Supreme Court's decision in *Taylor* and by this court's earlier decision in *Sherbondy,* and it does not implicate serious due process concerns. Instead, the wholly proper consideration of these documents, alongside the nunc pro tunc order, leads ineluctably to the conclusion that Sweeten's 1979 offense did involve the use or threat of physical force.

■ The *Taylor* Court itself recognized that "th[e] categorical approach ... may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases" where documents like "the indictment" or "jury instructions" make it clear that the factfinder "was actually required to find all the elements" of an offense that satisfies the terms of section 924(e). *Id.* at 2160 (discussing section 924(e)(2)(B)(ii)). The immediate case falls into that "narrow range of cases." We therefore hold that it is error for a district court, in attempting to determine whether a prior conviction satisfies the terms of section 924(e), to restrict its consideration to the original judgment of conviction and corresponding criminal statute if also presented with documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for

enhancement purposes. *See* Fed.R.Evid. 201 (judicial notice); *see also United States v. Harkey,* 923 F.2d 138, 138 n. 1 (9th Cir.1991) (citing *Taylor* and remanding for resentencing because "copies of the underlying informations" appended to the government's filings suggested that enhancement was proper); *United States v. Garza,* 921 F.2d 59, 60 (5th Cir.1991) (construing *Taylor* to authorize the courts to assess whether "the papers involved in [a defendant's] prior convictions contained the elements" of a predicate offense). To hold otherwise would frustrate Congress's purpose in enacting a mandatory minimum sentence for armed career criminals and would improperly constrict the meaning of *Taylor.*

**B**

█ We also disagree with the district court's conclusion that Sweeten's Texas conviction does not qualify as a conviction for "burglary" within the meaning of section 924(e)(2)(B)(ii). Filling in what Congress apparently left out, the *Taylor* Court provided a "generic" definition for "burglary" as that term appears in the enhancement provision:

> We conclude that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

*Taylor,* 110 S.Ct. at 2158. The Court went on to note that a few states "define burglary more broadly, *e.g.,* by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings." *Id.* at 2158–59. The Court explained that burglary convictions from these states, whose definitions are over-inclusive or "nongeneric," may not be considered for purposes of sentence enhancement unless state court documents, like the "charging paper and jury instructions," show that the factfinder was actually required to find all the elements of "generic" burglary. *Id.* at 2160.

Here, the district court, noting that Sweeten was convicted of "burglary of a habitation" and that the applicable Texas statute defines "habitation" to include "vehicles," determined that the Texas statute was nongeneric under *Taylor.* Noting that there was no indication that Sweeten's crime had *not* involved a vehicle, the court reasoned that it could not consider the Texas conviction for purposes of sentence enhancement under section 924(e)(2)(B)(ii).

There are two problems with the district court's analysis. First, although the Texas statute in question does define "habitation" to include "vehicles," it does not define "vehicles" to be synonymous with "automobiles" as the latter term was generically used by the Supreme Court in *Taylor.* The relevant portions of the Texas statute, which the government also entered into the district court record, provide that:

> (1) "Habitation" means a structure or vehicle *that is adapted for the overnight accommodation of persons,* and includes:
>> (A) each separately secured or occupied portion of the structure or vehicle; and
>> (B) each structure appurtenant to or connected with the structure or vehicle.
>
> (2) "Building" means any enclosed structure *intended for use or occupation as a habitation* or for some purpose of trade, manufacture, ornament, or use.
>
> (3) "Vehicle" includes any device in, on, or by which any person or property is or may be propelled, moved, or drawn in the normal course of commerce or transportation, *except such devices as are classified as "habitation."*

Tex.Penal Code Ann. § 30.01 (Vernon 1974) (emphasis added). It is apparent, therefore, that the applicable Texas definition of "habitation" only includes those vehicles—such as trailers, campers, and mobile homes—whose primary purpose is to serve as a dwelling and not as a mode of transportation. Viewed in this light, Sweeten's conviction for "burglary of a habitation" clearly constitutes a conviction for burglary within *Taylor*'s generic definition.

As the *Taylor* Court itself emphasized, the recent legislative history of section 924(e) indisputably demonstrates a congressional intent to broaden the category of qualifying burglaries. *See Taylor*, 110 S.Ct. at 2150 ("The issue under consideration was uniformly referred to as 'expanding' the range of predicate offenses."). Writing for the Court, Justice Blackmun explained:

> The legislative history ... indicates that Congress singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense ... because of its inherent potential for harm to persons. The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.... Congress apparently thought that all burglaries serious enough to be punishable by imprisonment for more than a year constituted a category of crimes that shared this potential for violence, and that were likely to be committed by career criminals. There never was any proposal to limit the predicate offense to some special subclass of burglaries that might be especially dangerous....

> \*　\*　\*　\*　\*　\*

> Congress presumably realized that the word "burglary" is commonly understood to include not only aggravated burglaries, but also run-of-the-mill burglaries involving an unarmed offender, an unoccupied building, and no use or threat of force. This choice of language [i.e., "a 'violent felony' ... *is* burglary"] indicates that Congress thought ordinary burglaries, as well as burglaries involving some element making them especially dangerous, presented a sufficiently "serious potential risk" to count towards enhancement.

*Id.* at 2152–53, 2157–58; *see also United States v. Cunningham*, 890 F.2d 199, 200–01 (9th Cir.1989) (order denying rehearing en banc) (O'Scannlain, J., dissenting) (discussing legislative history).

Given Congress's intent to define "burglary" broadly, it is implausible to suggest that Sweeten's "burglary of a habitation," as defined under the Texas statute, is not a burglary within the meaning of section 924(e)(2)(B)(ii). The burglary of a mobile home or other "vehicle adapted for the overnight accommodation of persons" is not analogous to the theft of an automobile or to the other property crimes whose relative lack of severity the *Taylor* Court (and presumably, Congress) meant to exclude from its generic definition. Rather, it is analogous to the burglary of a building or house. Indeed, the burglary of a mobile home or camper is often likely to pose a greater risk of violence to the occupant or owner than the burglary of a building or house because it is more difficult for the burglar to enter or escape unnoticed. In light of these considerations, we hold that the "burglary of a habitation," as defined to mean the burglary of "a structure or vehicle adapted for the overnight accommodation of persons," constitutes the burglary of a "structure" within the generic definition of *Taylor* and thus within the meaning of section 924(e)(2)(B)(ii). *See United States v. Leonard*, 868 F.2d 1393, 1399 (5th Cir.1989) ("We conclude that a conviction for a crime which the state [of Texas] denominates 'burglary' [and which includes 'burglary of a habitation'] is a conviction for burglary within the meaning of § 924(e)(2)(B)(ii).") (pre-*Taylor*), *cert. denied*, —— U.S. ——, 110 S.Ct. 2585, 110 L.Ed.2d 266 (1990).[1]

Finally, even if we were to assume that the Texas burglary definition is "nongeneric," the district court still erred in suggesting that it could not consider judicially noticeable documentation that might establish

---

**1.** It is important to emphasize that we do not reach our conclusion through an interpretation of or reliance upon Texas state law or Fifth Circuit law. Our obligation is to determine whether a defendant's criminal history meets the terms of 18 U.S.C. § 924(e), as that federal statute has been and is to be applied in the Ninth Circuit. To the extent that the statute requires us to examine a defendant's criminal history, we must do so—as a matter of federal, Ninth Circuit law.

that Sweeten's conviction was itself for generic burglary. To rule that a court can only consider the judgment of conviction when some other document, like the indictment or a signed guilty plea, might establish that the conviction in question clearly qualifies as a predicate conviction would, once again, frustrate Congress's purpose in enacting a mandatory minimum sentence for armed career criminals and would improperly constrict the meaning of *Taylor*.

## IV

In light of the foregoing, we vacate the district court's judgment and remand for sentencing in accordance with this opinion and 18 U.S.C. § 924(e). For purposes of resentencing, the court shall consider the guidelines in effect at the time of Sweeten's offense and not the recently promulgated guideline. *See Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (retrospective application of revised guidelines violates ex post facto clause); U.S.S.G. § 4B1.4 (new guideline applicable to sentence enhancements under 18 U.S.C. § 924(e)) (effective Nov. 1, 1990).

REVERSED and REMANDED.